UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JUAN URIAS MEDINA,

                        Petitioner,                       07-CV-1346
                                                                              [02-CR-291]

      v.

UNITED STATES OF AMERICA.

                        Respondent.
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I. INTRODUCTION**

      Juan Urias Medina ("Petitioner") filed the instant motion pursuant to 28 U.S.C. § 2255 challenging his criminal conviction and sentence. The government opposes this motion. For the reasons that follow, the motion is denied and his petition is dismissed.

**II. BACKGROUND**

      On October 2, 2003, Petitioner, Juan Urias Medina, was convicted of Conspiracy to Possess and Distribute Marijuana, in violation of Title 21 U. S. C. §§ 841 (a)(1), 846. On June 14, 2004, he was sentenced to 135 months imprisonment and five (5) years supervised release. Petitioner then appealed his conviction to the Second Circuit Court of Appeals, which, in a decision entered on September 19, 2005, affirmed the conviction and remanded the matter pursuant to United States v.

Crosby, 397 F. 3d 103 (2d Cir. 2005).  See United States v. Medina, 149 Fed. Appx. 32, 2005 WL 2277628 (2d Cir. Sept. 19, 2005).  This Court considered Petitioner's re-sentencing arguments and, on December 29, 2005, determined that the original 135-month sentence remained appropriate.  See 12/29/05 Dec. & Ord., dkt. # 650.  On September 22, 2006, the Second Circuit affirmed the Court's re-sentencing decision.  See Mandate, dkt. # 708.

Petitioner has now filed a motion *pro se* pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence.  He alleges that: (1) both his trial counsel and appellate counsel were constitutionally ineffective because they failed to raise a "buyer-seller" defense to the conspiracy charge; (2) his trial counsel was constitutionally ineffective because he failed to inform Petitioner that Petitioner could have entered a plea to the indictment and received a three-level reduction for acceptance of responsibility; and that (3) Amendment 709, a November 2007 amendment to the Sentencing Guidelines, should lower his criminal history category from II to I and reduce his sentence accordingly.  The government has opposed the motion and Petitioner filed a reply.

## III. DISCUSSION

### a. Ineffective Assistance Claims

To prevail on a Sixth Amendment claim for ineffective assistance of counsel, a petitioner bears the heavy burden of proving, by preponderance of the evidence, that (1) counsel's conduct "'fell below an objective standard of reasonableness,'" and that (2) this incompetence caused prejudice to the petitioner.  United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005)(quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).  This standard applies equally to the conduct of appellate counsel.  Frederick v. Warden, 308 F.3d 192, 197 (2d Cir. 2002).  In determining whether counsel was constitutionally ineffective, "[a] court can jump [directly] to the prejudice

prong without first determining whether counsel's performance was deficient." United States v. Burch, 166 F. Supp. 2d 1319, 1322 (D. Kan. 2001); see also Goodrich v. Smith, 643 F. Supp. 579, 582 (N.D.N.Y. 1986). As explained in Strickland, and as followed by this Court:

> [A] court need not determine whether counsel's performance was deficient before examing [sic] the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Goodrich, 643 F. Supp. at 582 (alteration in original) (quoting Strickland, 466 U.S. at 697). Further, a court can often make this determination on the record before it, as supplemented by affidavits of counsel and submissions by the petitioner, and need not hold an evidentiary hearing in each case. Crisci v. United States, 2004 WL 1932638, at *27 (2d Cir. Aug. 31, 2004) (rejecting ineffective assistance of counsel claim without conducting hearing based on affidavits from petitioner and his counsel); see also Chang v. United States, 250 F.3d 79, 82, 84–85 (2d Cir. 2001) (finding no abuse of discretion where district court denied, without a hearing, § 2255 motion alleging ineffective assistance of counsel following submissions of petitioner and his counsel that demonstrated petitioner was not entitled to relief).

To satisfy the prejudice prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. This probability must be shown with at least "some objective evidence other than defendant's self-serving assertions. . . ," Crisci, 2004 WL 1932638, at

*27; see also Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (requiring additional objective evidence), since "in most circumstances a convicted felon's self-serving testimony is not likely to be credible." Purdy v. Zeldes, 337 F.3d 253, 259 (2d Cir. 2003). Accordingly, a petitioner's "bare, unsubstantiated, [and] self-serving . . . statement[s]" are generally insufficient by themselves to sustain an ineffective assistance of counsel claim unless they are found credible given all the relevant circumstances. Slevin v. United States, 71 F. Supp. 2d 348, 357, 357 n.7 (S.D.N.Y. 1999); see also Purdy, 337 F.3d at 259 (noting that although a petitioner's statements ought not be rejected solely because they are unsubstantiated, they will be insufficient unless found credible given all relevant circumstances).

### 1. Failure to Raise "Buyer-Seller" Defense

Petitioner first argues that both his trial counsel, Joseph McCoy, Esq., and his appellate counsel, Bruce R. Bryan, Esq., were constitutionally ineffective because they failed to raise a "buyer-seller" defense to the conspiracy charge. A petitioner cannot prevail on an ineffective assistance claim based on the failure to raise a defense, however, if that defense was "meritless" or would have "stood little chance of success." Shire v. Costello, 2008 WL 2323379, at *12 (N.D.N.Y. June 2, 2008); see United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."), *cert. denied*, 531 U.S. 811 (2000); Hall v. Phillips, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) ("The law in this circuit is clear that when the underlying claims themselves are found to be meritless, the ineffective assistance claim is meritless as well."). Therefore, if the buyer-seller defense would have been meritless under the circumstances of this case, Petitioner's claim that his counsel was ineffective for not raising it cannot prevail. See Rosario-Dominguez v. United States, 353 F. Supp. 2d 500,

4

513 (S.D.N.Y. 2005) (rejecting ineffective assistance claim that was based on counsel's failure to raise meritless "buyer-seller" defense).

As set forth by the Second Circuit, the "buyer-seller" defense essentially immunizes from conspiracy liability buyers and sellers "in the typical buy-sell scenario, which involves a casual sale of small quantities of drugs, [and where] there is no evidence that the parties were aware of, or agreed to participate in, a larger conspiracy." United States v. Medina, 944 F.2d 60, 65 (2d Cir. 1991).  Accordingly, the defense does not apply "where . . . there is [evidence of] advanced planning among the alleged co-conspirators to deal in wholesale quantities of drugs obviously not intended for personal use." Id. at 65–66 ("Under such circumstances, the participants in the transaction may be presumed to know that they are part of a broader conspiracy.").

Here, as Petitioner himself concedes, there was "overwhelming evidence" of his active involvement in the conspiracy to traffic large quantities of marijuana.  See Pet'r Mot. 5, 6.[1]  As the government put it, this evidence demonstrated that "defendant was not just a seller of marijuana, but instead a trusted member of the conspiracy whose responsibility was to first assist and then assume full responsibility for the transportation of large quantities of marijuana from the Southwest to the Northern District of New York and Massachusetts." Resp't Mem. 5.  The Second Circuit concluded similarly in affirming Petitioner's conviction, noting the proven existence of "mutual dependence among the various conspirators and a common aim or purpose," and that there was "sufficient evidence from which it could conclude beyond a reasonable doubt that Medina's participation in the conspiracy involved more than 1,000 kilograms of marijuana." United States v.

---

[1] Although Petitioner claims that a "buyer-seller" defense should have been raised because of "insufficient evidence" of a conspiracy, he also argued in support of his second claim that counsel was ineffective for failing to inform him of the opportunity to plea in light of "overwhelming evidence" of conspiracy.  Pet'r Mot. 5, 6.

5

Medina, 2005 WL 2277628, at *34 (2d Cir. Sept. 19, 2005) ("Even interpreting the testimony of the eyewitnesses very conservatively, Medina supplied more than 1,000 kilograms."). For instance, one co-conspirator described Petitioner's participation as personally delivering 100 to 300 pound loads of the drug from Arizona to New York between three and four times each year for multiple years. Exhibit A (Driscoll Test.) 856–60, 879, 887, 918–19. Additionally, Petitioner himself conceded at trial and in his reply in this matter that he was aware of a larger undertaking. He stated: "There can be little doubt that petitioner understood that he was arranging a sale for [the buyers'] own use or *further network distribution*." Pet'r Reply 4 (emphasis added); see also Medina, 2005 WL 2277628, at *33 (noting that "Medina conceded his membership in the charged conspiracy at trial"). Accordingly, because the evidence at trial, including Petitioner's own concessions, clearly demonstrated that Petitioner was aware of, and actively participated in, a large-scale drug operation, the Court finds that a "buyer-seller" defense would have been meritless both at trial and on appeal. Therefore, because failure to raise a meritless defense does not amount to ineffective assistance, Petitioner's claim asserting the ineffectiveness of both his trial and appellate counsel is dismissed.

### 2. Failure to Inform of Plea Option

Petitioner next argues that his trial counsel, Joseph McCoy, Esq., was constitutionally ineffective because he failed to inform him that he could have pleaded guilty to the Indictment and received a three-level reduction for acceptance of responsibility. Because Petitioner has failed to establish that he was prejudiced by his counsel's alleged incompetence, the Court needs not dissect counsel's performance. Suffice it to say that other than self-serving statements, Petitioner offers no evidence that Mr. McCoy failed inform him of the ability to enter a plea of guilty. Further, Mr.

6

McCoy submitted a sworn statement in which he stated that "[o]n numerous occasions [he] advised Mr. Medina of this right [to plead guilty], including after his co-defendants entered such a plea in the middle of the trial on this case," and that he "also advised [Medina] of the possible penalties, including the sentencing guidelines penalties, that he would face as a result of such a guilty plea, both before and during the trial."  McCoy Aff. ¶ 5.  Despite being "aware of his rights," Petitioner "instead chose to exercise his right to a jury trial, resulting in his conviction."  Id. at ¶6.  See also Sinanan v. United States, 2005 WL 396384, at *4 (E.D.N.Y. Feb. 11, 2005) (relying primarily on attorney's affidavit to conclude that that attorney was not constitutionally ineffective).

But even crediting Petitioner's claim and assuming that Petitioner was not informed of the option of pleading guilty, Petitioner has failed to demonstrate with credible, objective evidence that but for counsel's alleged misstep there is a reasonable probability that the ultimate outcome would have been different, i.e., that Petitioner would have actually received a three-level reduction of his sentence for acceptance of responsibility.

"A defendant who enters a guilty plea is *not entitled* to an adjustment [for acceptance of responsibility] *as a matter of right*."  U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 cmt. n.3 (2008) (emphasis added).  Instead, and at the very least, a defendant must "clearly demonstrate acceptance of responsibility for his offense," by, at a minimum, "truthfully admitting the conduct comprising the offense of conviction . . . ."  Id. § 3E1.1(a), cmt. n.3.  Moreover, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct," and even if evidence of acceptance of responsibility exists, that evidence may be "outweighed by conduct of the defendant that is inconsistent with [that] acceptance."  Id. § 3E1.1, cmt. n.3, n.2.  In addition, because the reduction seeks to provide incentive for guilty defendants to

7

plead guilty before trial, "thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently," id. § 3E1.1(b), a defendant who forces the government to prove his guilt is much less likely to qualify for the reduction mid-trial, and is generally foreclosed from qualifying after conviction. U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.2.[2]  Therefore, unless a defendant takes at least the threshold step of convincingly admitting to his unlawful conduct prior to conviction, there would be little possibility that he would be afforded an acceptance of responsibility reduction.

Here, neither the evidence presented by Petitioner, the sworn statement submitted by his attorney, nor the other facts and circumstances surrounding Petitioner's trial and appeals suggest a reasonable probability that he would have adequately demonstrated responsibility for his unlawful conduct and been entitled to a sentence reduction.  Aside from now stating that he *would have* taken a guilty plea if it meant a reduced sentence—a statement that alone cannot establish prejudice, United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998) ("A defendant's post conviction testimony that he would have accepted the plea is insufficient to establish prejudice.")—Petitioner has offered no evidence in support of his alleged entitlement to an acceptance of responsibility reduction. See Pet'r Reply 9.  Further, Petitioner's persistent and continuing denial of guilt flatly contradicts the conclusion that he would have actually "accepted responsibility," or was even likely to enter a guilty plea.

Petitioner denied his guilt prior to and during his trial, forcing the government to prove its

---

[2] "The adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 cmt. n.2. Only "[i]n rare situations [may] a defendant clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial.  This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." Id.

case, even in the face of what he concedes was "overwhelming evidence" against him. See Pet'r Mot. 6 ("Petitioner submits that his trial counsel was aware that the evidence against him was overwhelming. . . ."); see also Pet'r Reply 8 (implying that Petitioner wanted to go to trial and "fight it out"); McCoy Aff.¶ 6 (noting Petitioner's desire to go to trial despite awareness of plea option). He continued to do so after being proven guilty on that evidence, claiming on appeal that he was not guilty of conspiracy and that the government failed to prove otherwise, see Pet'r Mot. 3, and even now, in his motion to this Court, Petitioner continues to claim, albeit contradictorily, that there was inadequate evidence to support his conspiracy conviction. See Pet'r Mot. 5; Pet'r Reply 3; see also supra note 1 (explaining the contradictory nature of Petitioner's claims).

Thus, in the absence of objective, credible evidence to show that he would have admitted guilt and accepted responsibility at any stage of the trial, and in light of his persistent denial of guilt throughout all stages of his trial and appeals, including in his motion to this Court, Petitioner has failed to demonstrate that but for his counsel's alleged errors there is a "reasonable probability" that he would have pleaded guilty and accepted responsibility. Accordingly, because neither the record, the offered evidence, nor Petitioner's arguments are sufficient to undermine confidence in the outcome of Petitioner's trial, Petitioner's second claim is dismissed.

### b. Sentencing Guidelines Amendment Claim

Petitioner's third and final claim is that his Criminal History Category should be lowered and his 2004 sentence reduced in line with Amendment 709, a November 2007 amendment to the Sentencing Guidelines. Although 18 U.S.C. § 3582 does authorize the modification of a sentence "based on a sentencing range that has been subsequently reduced by the Sentencing Commission," 18 U.S.C. § 3582(c)(2), an amendment to the guidelines is given retroactive effect only if it is

expressly listed in Section 1B1.10(c) of those guidelines, the Section exclusively governing the retroactivity of amendments. U.S. SENTENCING GUIDELINES MANUAL § 1B1.10(a)(1), (c) (2008). Here, Amendment 709—the amendment that Petitioner claims should be applied to reduce his sentence—is not listed in that section. Accordingly, it is not given retroactive effect, it is not applicable to Petitioner's 2004 sentence, and thus, Petitioner's final claim must be dismissed.

### c. Certificate of Appealability

Finally, the Court finds that Petitioner presents no viable issues upon which reasonable jurists could debate whether: (a) the sentence was imposed in violation of the Constitution or laws of the United States; (b) the Court was without jurisdiction to impose such sentence; (c) the sentence was in excess of the maximum authorized by law; or (d) the sentence is otherwise subject to collateral attack. Therefore, a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is denied. See Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1039-1040 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Barefoot v. Estelle, 463 U.S. 880, 893 (1983).

### IV. CONCLUSION

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and his petition is **DISMISSED**. A Certificate of Appealability pursuant to 28 U.S.C. § 2253 is **DENIED.**

**IT IS SO ORDERED**.

Dated:   December 1, 2008

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge